IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **SENECA SMITH (K-76299) ,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Case No. 11 C 189 |
| | ) | |
| **SERGEANT PRINTISS JONES and** | ) | Judge Elaine E. Bucklo |
| **SALVADOR GODINEZ,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Seneca Smith (also known as Roger Williams), is incarcerated at Stateville Correctional Center. In January 2011, he initiated this 42 U.S.C. § 1983 civil rights action against five officers and officials at the Cook County Jail concerning a fire that occurred in Plaintiff's cell while he was confined there. According to Plaintiff, on April 3, 2009, his cellmate set fire to a blanket in the cell; Cook County Jail Officers Printiss Jones and Russell intentionally delayed putting the fire out, letting Plaintiff out of his cell, and calling for help. Former Executive Director of the Cook County Department of Corrections Salvador Godinez allegedly refused to better equip cells with fire alarms and sprinklers and refused to conduct fire drills for inmates. On initial review, this Court allowed Plaintiff to proceed against Defendants Jones, Russell, and Godinez, but dismissed his claims against three other jail officials.

Since Plaintiff's filing of this suit, Officer Russell passed away in a motorcycle accident. A Suggestion of Death was filed on September 21, 2011. No Defendant has been substituted. The Court thus dismisses Russell as Defendant pursuant to Fed. R. Civ. P. 25.

Jones and Godinez[1], the two remaining Defendants, have filed a motion for summary judgment. Plaintiff has responded. For the following reasons, the Court grants in part and denies in part their motion. Summary judgment is granted for Defendant Godinez and the claims against him are dismissed. Summary judgment for Defendant Jones is denied, and Plaintiff may proceed with his claim of deliberate indifference to his safety against Jones.

## STANDARD OF REVIEW

This Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In determining the existence of a genuine issue of material fact, this Court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

The party asserting that a fact is not genuinely disputed, "must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Rule 56(c)(1)(A). If the moving party meets his burden of showing that no issue of material fact exists, the non-moving party must "go beyond the pleadings and affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact." *Borello v. Allison*, 446 F.3d 742, 748 (7th Cir. 2006) (internal quotation marks and citations omitted); *Celotex*, 477 U.S. at 322-26. A genuine issue of material fact is not

---

[1] During the pendency of this case, Officer Jones has been promoted to sergeant and Salvador Godinez left his position as Executive Director of the Cook County Department of Corrections and is now the Director of the Illinois Department of Corrections.

demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also Carrroll v. Merrill Lynch*, __ F.3d __, 2012 WL 4875456 at *3 (7th Cir. Oct. 16, 2012). Rather, a genuine issue of material fact exists only if a reasonable finder of fact could return a decision for the nonmoving party based upon the record. *See Anderson*, 477 U.S. at 252; *Insolia v. Phillip Morris Inc.*, 216 F.3d 596, 598-99 (7th Cir. 2000).

When addressing a summary judgment motion, this Court derives the background facts from the parties' Local Rule 56.1 Statements, which assist the court by "organizing the evidence, identifying undisputed facts, and demonstrating precisely how each side propose[s] to prove a disputed fact with admissible evidence." *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 527 (7th Cir. 2000). Because Plaintiff is proceeding *pro se*, the Defendants served him with a "Notice to *Pro Se* Litigant Opposing Motion for Summary Judgment" which explained to Plaintiff how to respond to the Defendants' summary judgment motion and Rule 56.1 Statement, as well as the consequences of failing to respond properly. *See* N.D. Ill. Local Rule 56.2.

This Court may consider a Rule 56.1 factual statement that is supported properly by the record to be true if the non-moving party either does not respond to it, offers only an evasive denial, or does not adequately cite to the record for his response. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006); *Cichon v. Exelon Generation Co., L/L.C.*, 401 F.3d 803, 809-10 (7th Cir. 2005); *Brasic v. Heinemann's Inc.*, 121 F.3d 281, 284 (7th Cir. 1997); *see also* Rule 56(e).

In the present case, the Defendants filed a Rule 56.1 Statement and notified Plaintiff of his need to respond. (R. 65, Defs.' Rule 56.1 Statement of Facts ("SOF") and R. 67, Notice to Pro Se Litigant.) Plaintiff has responded to Defendants' Rule 56.1 Statement of Facts, has submitted a list of disputed facts, and has submitted declarations from himself and three other witnesses. (R. 73, 74, 76.) Plaintiff

accepts many of Defendants' factual statements as true. As for the statements to which he objects, he provides additional information with citations mainly to the declarations he submitted. (R. 73, Pl.'s Response.) Defendants seek to strike Plaintiff's responses and disputed facts that are based upon his and inmate Robert Barnes' declarations, contending that Plaintiff's declaration contradicts his deposition testimony and that jail records indicate that Barnes had not returned from his trip to court earlier that day and thus was not on Plaintiff's tier at the time of the fire. (R. 80.) Plaintiff has responded to the motion, explaining how his declaration statements do not contradict his deposition testimony and stating that Barnes was on the tier at the time of the fire.

A plaintiff may not create "'sham' issues of fact with affidavits that contradict their prior depositions." *Ineichen v. Ameritech*, 410 F.3d 956, 963 (7th Cir. 2005). "Consequently, where a deposition and affidavit are in conflict, the affidavit is to be disregarded unless it is demonstrable that the statement in the deposition was mistaken, perhaps because the question was phrased in a confusing manner or because a lapse of memory is in the circumstances a plausible explanation for the discrepancy." *Velez v. City of Chicago*, 442 F.3d 1043, 1049 (7th Cir. 2006) (internal quotation marks and citation omitted). To the extent Plaintiff's declaration contradicts his deposition, the Court will look only to the deposition testimony. However, the Court will consider Plaintiff's declaration to the extent it provides information not addressed in Plaintiff's deposition. As for Barnes' declaration, the record is unclear as to whether the declaration was fabricated. Regardless whether Barnes was on the tier at the time, it is unnecessary to consider his declaration to decide the summary judgment motion.

Accordingly, the Court grants Defendants' motion to strike, but only for Plaintiff's declaration statements that contradict his deposition testimony. It appears that such a conflict exists only with the height of the flames at the time Plaintiff awoke (Plaintiff stated in his deposition that the fire was dying

down and flames were not that tall, but states in his declaration that the flames were three feet high). Defendants' motion to strike is denied with respect to Plaintiff's other declaration statements. The motion to strike Barnes' declaration is also denied; however, the Court will not consider the declaration as it provides no material information not already established by other evidence. The Court notes that, if Barnes' declaration is fabricated, Defendants may seek appropriate sanctions under Fed. R. Civ. P. 11. With the above standards in mind, the Court addresses the facts of this case.

## FACTS

In April 2009, Plaintiff was a pretrial detainee confined to a cell in Tier 2-E of Division 9 at the Cook County Jail. (R. 63, Defs.' SOF ¶ 8.) Division 9 is a segregation area of the jail, which houses inmates who have received disciplinary tickets. (*Id.* at ¶ 9.) Each tier contains two levels (decks) of 11 cells; Plaintiff's cell was on an upper level. (*Id.* at ¶ 10.) Quinton Green was Plaintiff's cellmate. (*Id.* at ¶ 12.) On April 3, 2009, Defendant Jones was working as a correctional officer in Division 9 Tier 2-E on the 3 p.m. to 11 p.m. shift. (*Id.* at ¶ 13.) On the evening of April 3, 2009, Plaintiff was awakened by the presence of smoke in his cell. (*Id.* at ¶ 14; R. 73, Pl.'s SOF ¶ 14.) A blanket was burning, and Plaintiff saw his cellmate trying to put the fire out. (R. 63, Exh. C, Pl.'s Depo. at 93.) Plaintiff stated in his deposition that "it was in the chuckhole" and he saw his cellmate "move[] it from the front of the" cell. (*Id.*) At the time Plaintiff awoke, the "flames w[ere] not that tall . . . It was just a ton of smoke" and Plaintiff was "choking, couldn't breathe, and could barely see." (*Id.*) Plaintiff "started hollering for help." (*Id.* at 94.) Plaintiff stated that he saw Officers Jones and Russell come to the interlock doorway within two to three minutes after Plaintiff and other inmates began yelling. Plaintiff called to them for help, stating: "There's smoke. I can't breathe." (*Id.*) According to Plaintiff, they responded, "you've been bugging us and whoop'in at us all day. We're going to let your ass die."

(*Id.*) The officers remained in the tier's lower level interlock area 40 to 50 feet away during this exchange. (*Id.*; Defs.' SOF ¶ 20; Pl.'s SOF ¶ 20.)

According to Sergeant Jones, at 10:41 pm., he was seated in the control room area when he was alerted to a commotion in the iter. (Defs.' SOF ¶ 22, citing Exh. D, Jones' Aff.) Jones states that he saw flames coming from a blanket in the cell; that he immediately contacted his partner Officer Steichman; that he placed a 10-70 call, indicating a fire and the need for backup assistance; and that he then called his immediate supervisor. (*Id.* at ¶¶ 27-28.) Jones avers that he had to first secure inmates in the dayroom. (*Id.* at ¶ 30.) Plaintiff disputes whether Jones contacted supervisors or placed an emergency call and whether there were detainees in the day room. (R. 73, Pl.'s SOF ¶¶ 23, 28-30.) According to Plaintiff, after Jones and Russell reentered the control room, they laughed and smiled but never picked up a phone or used the radio. (R. 76, Exh. A, Pl.'s Declaration at ¶ 7.) Plaintiff further states that Jones and Russell did not do anything until a sergeant making rounds came upon the fire and yelled at them for their inaction. (*Id.*)

In Jones' reply, he states that Plaintiff could not observe Jones' actions (or inactions) in the control room from the 40-50 feet distance between Plaintiff's cell and the interlock area and that Plaintiff has contrived a version of the events that includes a sergeant coming to the tier for an unrelated reason. (R. 81 at 5, citing R. 65, Defs' SOF ¶ 20.) The record does not contain evidence to establish whether Plaintiff could observe the control room from his cell or whether a sergeant happened upon the situation. The actions Jones took upon learning of the fire are thus disputed.

Plaintiff testified that officers arrived with a fire extinguisher ("more like a water hose") "after 30 minutes, 20 minutes or something when the sergeant or somebody arrived." (R. 63, Exh. C, Pl.'s Depo. at 95-96.) By that time officers arrived, "the fire was basically kind of out, but it was still smoking real bad." (*Id.* at 96.) Once the fire was extinguished, Plaintiff and his cellmate were removed

from the cell. (Defs.' SOF at ¶ 37; Pl.'s SOF at ¶ 37.) Plaintiff was taken to Cermak Health Services, located in the jail's complex. (Defs.' and Pl.'s SOF at ¶ 38.) Plaintiff suffered no burns, but was exposed to a lot of smoke and suffered smoke inhalation. (Defs.' and Pl.'s SOFs at ¶ 39.)

As for smoke alarms, sprinklers, and fire drills, the evidence indicates that inmates did not participate in fire drills and were not informed of fire evacuation plans. (Defs.' and Pl.'s SOF at ¶¶ 41-42.) Nor are individual cells on Tier 2-E equipped with fire alarms or sprinklers. (Defs.' and Pl.'s SOFs at ¶ 36.) However, General Order 8.2 provides that each division is provided with evacuation instructions and that fire drills for officers are to be conducted at least once a month. (R. 65, Exh. E.) Plaintiff does not know what information is given to offiers about fire evacuations and drills. (Defs.' and Pl.'s SOFs at ¶ 42.) Jones contends, and Plaintiff does not dispute, that Jones has participated in fire drills and has been trained on fire safety procedures. (Defs.' and Pl.'s SOFs at ¶ 44.) Facilities Management of the jail is responsible for ensuring that buildings at the jail comply with State and County Codes. (*Id.* at ¶ 45.)

## DISCUSSION

As a pretrial detainee at the time of the fire, Plaintiff's claims are governed by the Fourteenth Amendment, as opposed to the Eighth Amendment. "'Although the Eighth Amendment applies only to convicted persons, pretrial detainees ... are entitled to the same basic protections under the Fourteenth Amendment's due process clause,' and [courts] apply the same deliberate indifference standard in both types of cases." *Rosario v. Brawn*, 670 F.3d 816, 820-21 (7th Cir. 2012), quoting *Minix v. Canarecci*, 597 F.3d 824, 831 (7th Cir. 2010). The Eighth Amendment's ban on cruel and unusual punishment and the Fourteenth Amendment's due process protections both prohibit officers from acting with deliberate indifference to an inmate's health and safety. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). To succeed on a deliberate indifference claim, a plaintiff must satisfy a two-step

standard that contains both an objective and a subjective component. He must prove that: (1) he faced an objectively serious and substantial risk to his health or safety, and (2) the individual defendants were deliberately indifferent to that risk, i.e., they were actually aware of and consciously disregarded the risk. *Rosario*, 670 F.3d at 820-21, citing *Collins v. Seeman*, 462 F.3d 757, 760 (7th Cir. 2006); *see also Farmer*, 511 U.S. at 833.

As to the first prong, Defendants acknowledge that a fire in a cell can be considered a serious risk of harm, but contend that the evidence in this case establishes that Plaintiff faced no such risk. Defendants cite to Plaintiff's deposition testimony that, at the time he awoke, "the fire was dying down and the flames were not that tall" and that the "fire was basically kind of out" by the time officers arrived with fire extinguishers. (R. 65, Exh. C, Pl.'s Depo. at 93.) Defendants compare this case to the situation alleged in *Rabb Ra Chaka v. O'Leary*, No. 88 C 3753, 1989 WL 56874 at *1 (N.D. Ill. May 24, 1989) (Nordberg, J.), where a "fire burned out of control for approximately forty-five minutes, igniting several explosions inside the cell, which was directly below plaintiff's cell." According to Defendants, Plaintiff faced no roaring fire like *Rabb Ra Chaka*, but instead was exposed to only smoke, for which he was immediately treated and suffered no injury.

Plaintiff contends that flames were three feet high and was still burning after 30 minutes when Jones finally extinguished it. Although this Court will not consider Plaintiff's declaration statement that flames were three feet high, *see Velez*, 442 F.3d at 1049, even without this statement, the summary judgment evidence indicates that there was a fire in his cell that produced "a ton of smoke" causing Plaintiff to "chok[e]" and experience difficulty breathing. (R. 65, Exh. C, Pl. Depo. at 93.) Additionally, there appears to be no dispute that, at the time officers arrived with fire extinguishers or hoses, there was still "little flames" and the blanket "was still smoking real bad." (*Id.* at 96; *see also* R. 65, Exh. D, Jones Aff. ¶¶ 21, 26-27 (Jones indicates that there were still flames on the blanket when

he extinguished it 15 minutes after learning of the fire).) Viewing the evidence in a light most favorable to Plaintiff, the Court cannot conclude that a fire burning for 15 to 30 minutes producing thick smoke that caused choking was not a serious risk to Plaintiff's safety.

As to the second prong, Sergeant Jones contends that his arrival with officers with fire extinguishers within 15 to 30 minutes after learning of the fire demonstrates no consicous disregard to Plaintiff's safety. Jones contends that, despite his alleged "let your ass die" remark, he and Russell followed the Cook County Department of Corrections General Order 8.2 by making a 10-70 call, notifying their immediate supervisor, and securing the area before putting out the fire. (R. 66 at 8-9, citing R. 65, Exh. D, Jones' Aff.)

Jones' actions upon learning of the fire, however, are disputed. (Compare R. 65, Defs' SOF with R. 73, Pl.'s SOF ¶¶ 29-30.) According to Plaintiff, Jones and Russell came to the interlock doorway, saw the fire and smoke, yelled up toward Plaintiff's cell "We're going to let your ass die" and proceeded to do nothing about the fire for an additional 20-30 mintues. (R. 65, Exh. C, Pl.'s Depo. at 94-95.) Plaintiff contends that Jones and Russell never phoned or radioed anyone about the fire, but instead laughed and smiled at the sitatuion from the control room unitl a sergeant arrived, saw the fire, and chastised them for their inaction. (R. 73, Pl.'s Declaration ¶ 7.) Although Jones counters and states that Plaintiff could not observe what occurred in the control room, (R. 81, Reply at 5), the record is undeveloped as to what could be observed from Plaintiff's cell, as well as what actions Jones took in response to the fire.

Given the disputed facts about Jones' reaction once he learned of the fire, the Court cannot find on summary judgment that he acted reasonably to abate the serious risk of harm Plaintiff faced. "[F]ailing to free a man from his burning prison cell ... violate[s] an inmates most basic and established constitutional rights." *White v. Cooper,* 55 F. Supp. 2d 848, 858 (N.D. Ill. 1999); *see also Rabb Ra*

*Chaka,* 1989 WL 56874 at *4 (complaint survied motion to dismiss where it alleged that defendant officers "taunted prisoners during the fire, rather than take quick steps to extinguish the fire or evacuate the inmates.") Accordingly, the motion for summary judgment is denied for Jones.

As to Defendant Salvador Godinez, Plaintiff alleges that Godinez is liable for the lack of fire-safety mechanisms such as fire alarms and sprinklers in the cells and for the lack of fire drills for inmates. Plaintiff contends that he would have known about the fire earlier and would have known what to do, had such devices and training been provided. (Compl. at 7.) The Cook County Department of Corrections' General Order 8.2 sets out fire safety procedures. General Order 8.2 provides:

> **III E 2. Distribution and Posting of the Fire and Evacuation Plain:**
>
> A copy of the one page general emergency instructions shall be posted in a conspicuous place in each division/unit in the facility and a copy of the floor plan in that area which reflects the location of extinguishers, exits, emergency equiment. This plan will include:
>
> 1.   Floor plan layouts
> 2.   Location of exits and escape routes.
>
> **13. Fire Drills**
>
> All divisions will provide written procedures and policy mandating that Fire Drills shall be conducted, at least monthly under the direction of the division Superintendent or designee. All drills conducted throughout the department will be documented, maintained on file for a period of at least 36 months, and produced upon legitimate request.

(R. 65, Exh. E, Copy of General Order 8.2.)

Letters from the Chicago Fire Department reveal that it reviewed and approved the emergency and evacuation provisions set out in General Order 8.2 and approved fire-safety procedures for each of the jail's divisions. (R. 65, Exh. K, 12/15/09 and 11/17/10 letters from Deputy Fire Commissioner Nicholas Russell to Salvador Godinez.) The record further shows that fire drills were conducted in Plaintiff's division throughout 2009 and 2010, prior to the fire. (*Id.* at Exh. L.). Additionally, Sergeant

Jones contends, and Plaintiff does not dispute, that he participated in fire drills and has been trained in fire safety. (R. 65, Defs.' SOF ¶ 44.)

Although this Court has stated that "[t]he absence of fire safety and prevention devices, which are necessary in a correctional facility to notify staff that a fire has started and to aid in the evacuation of smoke, is an obvious risk of serious harm." *White,* 55 F. Supp. 2d at 858, there is no indication of defective or non-existent fire safety equipment or procedures in this case. No one contends that officers arrived with inoperable fire extinguishers or that the fire and evacuation procedures set forth in General Order 8.2 and approved by the Chicago Fire Commission were insufficient. Rather, Plaintiff's claims center on the officers' reaction to the fire and their conscious disregard to such procedures.

Given the lack of evidence of insufficient or ineffective fire safety procedures or equipment at the jail, summary judgment is warranted for the claims against Godinez. *Arnett v. Webster*, 658 F.3d 742, 760 (7th Cir. 2011) (at the summary judgment stage of the case, if a plaintiff cannot show what evidence he has that would convince a trier of fact of his claim, the defendant is entitled to judgment). Accordingly, summary judgment is granted for Godinez.

## CONCLUSION

For the reasons stated herein, Defendants' motion for summary judgment [64] is granted in part and denied in part. Summary judgment is granted for Defendant Salvador Godinez and the claims against him are dismissed. Summary judgment is denied for Defendant Sergeant Jones and Plaintiff may proceed with his claims against him. Defendants' motion to strike Plaintiff's declaration and the declaration of Robert Barnes [80] is granted in part and denied in part. The Court grants the motion for Plaintiff's declaration statement that flames were three feet high when he awoke. The motion is denied for Plaintiff's other declaration statements and for Barnes' declaration, although the Court has

not considered Barnes' declaration in deciding the summary judgment motion. Plaintiff's motion opposing summary judgment [74]is denied but the Court construes the motion as part of Plaintiff's response to Defendants' summary judgment motion.

ENTER: *[signature: Elaine E. Bucklo]*

**Elaine E. Bucklo**
**United States District Court Judge**

**DATE: October 31, 2012**